UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    -against-

GREGORY JOHN SCHAFFER,
    also known as
    "John Archambeault,"

        Defendant.

- - - - - - - - - - - - - - - - - X

**12 M 521**

COMPLAINT AND AFFIDAVIT
IN SUPPORT OF ARREST
(18 U.S.C. § 2422)

    ROBERT MANCENE, being duly sworn, deposes and states as follows:

    Upon information and belief, there is probable cause to believe that, in or about March 2012, within the Eastern District of New York and elsewhere, the defendant GREGORY JOHN SCHAFFER, also known as "John Archambeault," did knowingly and intentionally persuade, induce, entice and coerce an individual to travel in interstate commerce to engage in any sexual activity for which any person can be charged with a criminal offense, to wit sexual assault, pursuant to NJ Stat. § 2C:14-2(c)(4).

    (Title 18, United States Code, Section 2422(a))

    Upon information and belief, there is probable cause to believe that, in or about March 2012, within the Eastern District of New York and elsewhere, the defendant GREGORY JOHN SCHAFFER, also known as "John Archambeault," using a facility and means of interstate commerce, did knowingly and intentionally persuade, induce, entice and coerce an individual who has not attained the

age of 18 years, to engage in any sexual activity for which any person can be charged with a criminal offense, to wit sexual assault, pursuant to NJ Stat. § 2C:14-2(c)(4).

(Title 18, United States Code, Section 2422(b))

The source of your deponent's information and the grounds for her belief are as follows:

1. I am a Special Agent with Department of Homeland Security, Homeland Security Investigations ("HSI"). I have been an HSI Special Agent since 1996. For approximately the past three years, I have been assigned to an HSI Child Exploitation Group in New York City. In that capacity, I have conducted investigations into federal crimes relating to the sex trafficking of minors, Mann Act violations and child pornography. As an HSI Special Agent, I have conducted or participated in surveillance, the execution of search and arrest warrants, debriefings of informants, victims and witnesses, and have participated in investigations that included the interception of wire communications. Through my training, education and experience, I have become familiar with the manner in which individuals conduct and conceal activity involving the sexual exploitation of children. I am familiar with the facts and circumstances of this investigation from: (a) my personal participation in the investigation; (b) reports made to me by other law enforcement authorities and forensic professionals; and (c) review of records and reports.

2. Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the information was provided by another law enforcement officer or witness who may have had either direct or hearsay knowledge of that statement and to whom I or others have spoken or whose reports I have read and reviewed. Such statements are among many statements made by others and are stated in substance and in part unless otherwise indicated. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included details of every aspect of the investigation. Facts not set forth herein are not being relied on in reaching my conclusion that the requested warrant should be issued. Nor do I request that this Court rely on any facts not set forth herein in reviewing this application.

## PROBABLE CAUSE

3. In or about March 2012, New York City Police Department ("NYPD") detectives notified HSI that a 15-year-old girl ("Jane Doe") from Brooklyn, New York had reported that she was sexually assaulted several days earlier at the PREMISES by a 30 to 35-year-old man named "John."

### Interview of Jane Doe

4. On or about April 5, 2012, at HSI's request, Jane Doe was interviewed by a clinical forensic specialist. During the interview, Jane Doe stated, in part and substance:

    a. Prior to March 17, 2012, she had posted an ad

on Craigslist indicating that she was a "Teen in need of a afterschool &amp; weekend job (NYC)."

    b. In early March, someone named "John Archambeault" (who was subsequently identified as the defendant GREGORY JOHN SCHAFFER ("SCHAFFER")) responded to Jane Doe's ad by email, stating that he was "looking for part time help in my store in newport mall in jersey city" [sic].[1] He also asked, "Can you send info and let me know if you are interested in it." Jane Doe responded by indicating that she was interested and transmitted her resume. She also indicated what hours she wanted to work and expressed concern about travel expenses and working around her school schedule. SCHAFFER assured Jane Doe that he could "work out" those issues with her, and asked when she would be free for an interview.

    c. In subsequent email communication, SCHAFFER asked for Jane Doe's age, what work she was interested in doing and what she was planning to go to college for. Jane Doe told SCHAFFER that she was 15 years old and that she was interested in business management, culinary arts and photography, to which SCHAFFER responded that he might have something that would "fit in with what you want to study." He also asked whether she would be coming to New Jersey with her parents or alone, and asked her

---

[1] The quoted excerpts from the emails are taken from the actual email messages between SCHAFFER and Jane Doe. In at least one of his emails, SCHAFFER stated that his full name is "John Archambeault."

to send a photograph for "security." SCHAFFER also told Jane Doe that he owned a few retail stores, including American Eagle Outfitters, Champs Sports, Victoria's Secret (which, he indicated, was the store in which he needed help) and Spencer Gifts. Jane Doe responded that she would be more comfortable working in Champs Sports, but would work in Victoria's Secret if she had to.

    d. On or about March 17, 2012, Jane Doe traveled from her home in Brooklyn to SCHAFFER's office in Jersey City, New Jersey, accompanied by a male friend, who was also a minor ("Friend"). Once inside the office suite area, SCHAFFER took Jane Doe into a private office area and closed the door, leaving the Friend in the waiting area.

    e. During the March 17th meeting, SCHAFFER told Jane Doe that he was probably going to have her work in his Victoria's Secret store. He told Jane Doe that she would need "working papers" and a physical examination to work in New Jersey. SCHAFFER also asked Jane Doe whether she was sexually active, which she stated she was, and whether she used drugs. SCHAFFER gave Jane Doe paperwork for her great grandmother, who is Jane Doe's guardian, to sign.

    f. That night, Jane Doe's great grandmother signed the paperwork and Jane Doe emailed SCHAFFER to advise him that the paperwork was signed. SCHAFFER responded by email, asking her if she could return the next day with the paperwork.

He added that she should come alone because it might be her first day of work.

    g. On or about March 18, 2012, Jane Doe again traveled from her home in Brooklyn to SCHAFFER's Office, this time alone. During the March 18th meeting, SCHAFFER gave Jane Doe a "confidentiality agreement," which he asked her to sign. SCHAFFER also gave Jane Doe an employment contract to sign. Jane Doe signed both agreements without reading them carefully.

    h. After she had signed them, SCHAFFER informed Jane Doe that by signing them, she had agreed to have sex with him. SCHAFFER had Jane Doe try on "outfits" for him, which included a bathing suit. Prior to putting on the bathing suit, Jane Doe was told by SCHAFFER that if the job was important to her she would try on the bathing suit. SCHAFFER took pictures of Jane Doe in the bathing suit. SCHAFFER removed his pants, revealing that he was wearing a Speedo bathing suit, and told Jane Doe that he wanted to photograph them together. At this point, Jane Doe told SCHAFFER that she did not feel comfortable.

    i. SCHAFFER tried several times to place Jane Doe's hands on his genitalia. Jane Doe then asked if she could get out of the contract. SCHAFFER asked Jane Doe if she had a boyfriend, to which she responded that she did and that he was 17 years old. SCHAFFER threatened to "report" the boyfriend -- impliedly for having sex with Jane Doe -- if she broke the

contract. SCHAFFER also threatened to sue Jane Doe's great grandmother for breach of contract.

   j.   SCHAFFER had sexual intercourse with Jane Doe on the desk of his office. SCHAFFER used a condom that he obtained from his desk drawer. During the sexual intercourse, Jane Doe attempted to reach for her cell phone several times, but SCHAFFER blocked her hand.

   k.   Jane Doe did not want to have sexual intercourse with SCHAFFER, but was afraid of being sued.

   l.   Afterward, SCHAFFER told Jane Doe that he would remove the sex part of the contract and gave her a new contract. SCHAFFER shredded the contract that Jane Doe had signed. SCHAFFER told Jane Doe not to speak to anyone about their sexual encounter because that would be a breach of their confidentiality agreement.

   m.   When Jane Doe returned home, she told her boyfriend ("Boyfriend") what had happened.

   n.   During the time that Jane Doe was in SCHAFFER's office on March 18th, there was a black still or video camera on a tripod in the office. The black camera was in the room when Jane Doe was changing into the bathing suit, and then SCHAFFER replaced it with a red camera after she had changed into the bathing suit.

<u>Interview of the Friend</u>

5. On May 29 and 30, 2012, I interviewed the Friend, who reported, in part and substance, that he had accompanied Jane Doe to an office in Jersey City for a job interview. The Friend stated that Jane Doe and he were met by a man when they entered the office area in the building and that the man took Jane Doe into a private office and shut the door. The Friend remained in the waiting area. Jane Doe was in the interior office with the man for about 45 minutes. After Jane Doe and the Friend had left the building, Jane Doe told the Friend that she had gotten the job and that the man had asked her to return later. When the Friend called Jane Doe the next day, she told the Friend that she was approaching the same Jersey City office building. A couple days later, Jane Doe told the Friend that the man in the Jersey City office had raped her.

### Interview of the Boyfriend

6. On May 29 and 30, 2012, I interviewed the Boyfriend, who reported that after Jane Doe had returned from her second trip to Jersey City, she called him. She was crying and asked him if he loved her, to which the Boyfriend responded affirmatively and asked her what had happened. Jane Doe told the Boyfriend that the job offer had turned into something that she did not want. She explained that the man had taken pictures of her in lingerie and that the man had a photographer friend to whom he could send the photos. The man later said that he would post the photos on the Internet if Jane Doe did not have sex with

him. Jane Doe also said that she had signed a contract that she thought was for a retail job, but that the man later told her that under the contract, she was legally bound to have sex with him, or else he could sue her. Jane Doe further stated that she had sex with the man because she feared that her great grandmother could get in trouble for letting Jane Doe travel by herself to Jersey City. When the Boyfriend later saw Jane Doe, she showed him the contract. Out of anger, the Boyfriend ripped it up and disposed of it. Jane Doe also showed the Boyfriend a business pen from SCHAFFER that indicated that SCHAFFER's last name is "Archambeault."

### Photo Identification of "SCHAFFER"

7. Jane Doe and the Friend both identified a photograph of "SCHAFFER" from a photo array as the "John Archambeault" who had sexually assaulted her on March 18, 2012.

### Records Checks

8. Publicly available corporate records indicate that there are, in fact, Victoria's Secret, American Eagle, Champs Sports and Spencer Gifts stores at the Newport Center Mall in Jersey City. However, each of these stores is corporately, and not individually, owned and operated. These records further indicate that none of the managers at these stores is John Archambeault or GREGORY SCHAFFER.

### Search of SCHAFFER's Office

9. On June 3, 2012, HSI agents executed a search warrant, issued by a federal judge in the District of New Jersey, for SCHAFFER'S office. During the search, agents recovered, among other things, a folder containing a letter from Jane Doe, a laptop computer, a red video camera, a DVR recorder and player, a large computer monitor, computer-printed photographs of teenage-appearing girls wearing bathing suits or naked, condoms, sexual paraphernalia, including lubricants, handcuffs and sex toys, employment applications, some of which include questions about the applicant's sexual activity and dating status, and a document entitled "Sex Contract."

## CONCLUSION

10. WHEREFORE, your deponent respectfully requests that the defendant GREGORY JOHN SCHAFFER, also known as "John Archambeault," be arrested so that he may be dealt with according to law.

Robert Mancene, Special Agent
Homeland Security Investigations

Sworn to and subscribed before me
this ____ day of June, 2012